# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| EDMONDSON COMMUNITY ORGANIZATION, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No.: 1:24-cv-01921-BAH |
| MAYOR AND CITY COUNCIL OF BALTIMORE, *et al.*, | |
| Defendants. | |

### EAST COAST TAX AUCTION, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS

Elchanan ("Elliott") Engel
Bar No. 28299
**BERMAN, BOYLE & ENGEL LLC**
1777 Reisterstown Road, Suite 265
Baltimore, Maryland 21208
667-217-5150
ee@bbelaw.com

*Attorney for East Coast Tax Auction, LLC*

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................................. 1

II.  ARGUMENT ......................................................................................................................... 2

    1.   Ms. Anderson's Claims against ECTA are Barred by Res Judicata ................................. 2

    2.   Ms. Anderson Cannot Allege a Plausible Fifth Amendment Violation............................ 6

    3.   ECTA is Not a State Actor................................................................................................ 9

    4.   Ms. Anderson has Failed to State a Claim for Unjust Enrichment ................................. 11

    5.   The Tax Sale Process Benefits Baltimore Residents ...................................................... 12

III. CONCLUSION.................................................................................................................... 13

Defendant, East Coast Tax Auction, LLC ("**ECTA**"), by and through its undersigned counsel, hereby files this Reply in Support of its Motion to Dismiss the Amended Complaint filed by Plaintiffs, Edmondson Community Organization, Inc. ("**ECO**") and Bonita Anderson ("**Ms. Anderson**") (collectively, "**Plaintiffs**").

## I.     INTRODUCTION

Ms. Anderson blatantly and repeatedly misrepresents the Maryland tax sale process throughout the Opposition. Contrary to Ms. Anderson's assertions, the Maryland tax sale process involves the **<u>sale of the property</u>** -- not the tax lien – to the highest bidder. ECTA was the highest bidder at the auction and indisputably paid, in full, the auction value for the property. There is no dispute that Ms. Anderson actually received the delta between the outstanding tax lien obligation (paid to the City) and the auction value of the property paid by ECTA.  Thus, Ms. Anderson's claims in this lawsuit lack any merit.

Moreover, Ms. Anderson had an obligation to raise any defenses to the tax sale process in the state court proceedings foreclosing the right of redemption. Ms. Anderson could – and should – have raised her claim that Maryland's tax sale process is somehow constitutionally flawed in those proceedings. This Court cannot, and should not, hear the merits of this dispute with respect to ECTA because Ms. Anderson's claims are barred by res judicata. Ms. Anderson does not contest that she and ECTA were both parties to the state court proceedings foreclosing the right of redemption and that there is already a final judgment on the merits foreclosing Ms. Anderson's right to redeem the property. Instead, Ms. Anderson erroneously argues that her claims did not arise from the same transaction and that she could not have raised these claims in the state court proceedings. Ms. Anderson is sorely mistaken. Not only could Ms. Anderson have challenged the tax sale in the state court proceedings, but Maryland law **required** Ms. Anderson to raise her

claims in the state court proceedings. All three elements of res judicata are satisfied, requiring dismissal of Ms. Anderson's claims against ECTA.

Finally, even if the Court reaches the merits, Ms. Anderson fails to state a claim against ECTA. First, the Maryland tax sale scheme complies with constitutional requirements. Second, Ms. Anderson cannot assert Fifth Amendment violations against ECTA, a private actor. Third, Ms. Anderson's unjust enrichment claim fails because ECTA did not play any role in Ms. Anderson's purported loss, and the state court ensured that Ms. Anderson received adequate compensation for her property. Fourth, contrary to Ms. Anderson's assertions, Maryland's tax sale process furthers important public policy goals. Accordingly, this Court should grant ECTA's Motion and dismiss Ms. Anderson's claims against ECTA.

## II.     ARGUMENT

**1. Ms. Anderson's Claims against ECTA are Barred by Res Judicata**

In the Opposition, Ms. Anderson attempts to argue that (1) Maryland's tax sale process only results in the sale of a tax lien rather than a sale of the property; and (2) she could not have raised her claims until after the City issued the Deed to ECTA, which was after the conclusion of the state court proceedings. Opp., at p. 10-14, 43-46. Stated differently, according to Ms. Anderson, ECTA only purchased the "tax lien" at the tax sale, and somehow after the final judgement by the state court concerning solely the sale of the "tax lien," the City (for some unexplainable reason) transferred the Deed to ECTA without Ms. Anderson ever receiving compensation for it. Ms. Anderson entirely misconstrues Maryland's tax sale system.

First, Maryland's tax sale statutes expressly state that the tax sale process results in the **sale of the property** – not just the lien. TP §§ 14-808, 14-809 ("the municipal corporation collector . . . may use the provisions and procedures of this subtitle **to sell the property** . . ."), 14-

2

812, 14-814, 14-820 (emphasis added). Section 14-818(a)(4) further proves that the tax sale scheme results in the sale of the property. This provision requires the municipality <u>to pay the taxpayer the difference between the tax debt and the winning bid at the tax sale</u> and ensures that the taxpayer receives just compensation for the sale of the property. § 14-818(a)(4).

Second, Maryland case law discusses tax sales as property sales – not just the sale of the tax lien. *See Heartwood 88, Inc. v. Montgomery County*, 156 Md. App. 333, 339 (2004) (describing Maryland tax sale as "annual **sale of parcels of real property** located in the County, for which the payment of property taxes was delinquent" (emphasis added)); *Mayor & City Council of Baltimore v. Thornton Mellon, LLC*, 478 Md. 396 (2022) ("By requiring that the judgment direct the collector to execute a deed conveying fee simple title to the certificate holder upon the performance of the post-judgment conditions, the Legislature created a process for conveying fee simple title to **property sold** at a tax sale . . ."(emphasis added)). Because Maryland law clearly establishes that a tax sale results in the **sale of the property** and not just the tax lien, this Court should reject Plaintiffs' baseless argument that ECTA purchased the tax lien, but somehow ended up with title to the property for no consideration.

Third, under clearly established Maryland law, successful tax sale proceedings ultimately result in the City conveying the deed to the tax sale purchaser; a new cause of action does not arise out of the deed's conveyance. "[U]pon proof of satisfaction of the judgment and payment of any subsequent taxes, interest and penalties owed, the *collector is required to execute a proper deed when one is presented by the certificate holder*." *Mayor & City Council of Baltimore v. Thornton Mellon, LLC*, 478 Md. 396, 424 (cleaned up); *see* TP § 14-808(a)(3) ("On receiving the balance and after accrued taxes and interest and penalties on the taxes, the collector shall execute and deliver a proper deed to the purchaser."). In other words, contrary to Ms. Anderson's assertions,

3

the City does not unilaterally decide to issue a deed to a tax sale purchaser. Rather, the City's issuance of the deed is the last step in the tax sale process, and the City is **required** to execute a proper deed when the tax sale purchaser fulfills its obligations.

Fourth, importantly, Maryland law requires parties to raise any issues relating to the tax sale in the state court proceedings. Section 14-842 of the Tax-Property Article provides that "[a] defendant alleging any jurisdictional defect or invalidity in the taxes or in the proceeding to sell, or in the sale, must particularly specify in the answer the jurisdictional defect or invalidity and must affirmatively establish the defense." This requirement is further reinforced by Maryland Rule 14-505, which requires that "[a]ny issue as to the validity of the taxes, **the proceedings to sell the property**, or the sale, shall be raised by separate affirmative defense." *Id.* (Emphasis added). Maryland law requires parties to raise any alleged deficiencies in a tax sale prior to the issuance of a judgment foreclosing the right of redemption because a judgment foreclosing the right of redemption "vests in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of the judgment and encumbrances on the property, except taxes that accrue after the date of sale and easements . . ." TP § 14-844.

Ms. Anderson's claims all stem from an alleged deficiency in the proceedings to sell the property. Opp., at p. 10-14. Contrary to Ms. Anderson's assertions, § 14-842 and Md. Rule 14-505 **required** Ms. Anderson to raise these claims in the state court proceedings. *See* Opp., at 43-46.

Indeed, in the state court proceedings, Ms. Anderson challenged the amount ECTA owed her, and the state court ordered ECTA to pay Ms. Anderson $19,336.77 for her payment of property taxes for the period of July 28, 2020, to January 2, 2024. *See* Exhibits 1-3 to the Motion. Ms.

4

Anderson's claim asserted in the state court proceedings establishes that Ms. Anderson did not challenge a sale of the tax lien – but rather the compensation she received from ECTA for purchasing the title to her property. Thus, although Ms. Anderson clearly understood that she had the ability to challenge any deficiencies in the tax sale process, she failed to raise these claims in the state court proceedings.

*Tri-Towns Shopping Center, Inc. v. First Federal Savings Bank of Western Maryland*, 114 Md. App. 63 (1997) provides further support for ECTA's argument. In *Tri-Towns Shopping Center, Inc.*, the court concluded that the appellant's claims were "a disguised attack on the adequacy of the purchase price obtained at the foreclosure sale." *Id.* at 75. Therefore, the court held that "when a junior lienholder excepts to the ratification of a mortgage foreclosure sale . . . it is generally precluded, on *res judicata* grounds, from thereafter filing a separate suit based upon the alleged improper actions . . . that are directly or indirectly alleged to have caused the purchase price to be inadequate." *Id.* at 76. Similarly, Ms. Anderson's claims are a "disguised attack" on the validity of the tax sale proceedings, and res judicata bars her from filing a separate suit alleging that ECTA's alleged improper actions caused the purchase price to be inadequate.

Ms. Anderson cites *Hughes v. Insley*, 155 Md. App. 608, 627 (2003), in support of her argument that her claims did not accrue until the City conveyed the Deed to ECTA. Opp., at p. 44. *Hughes*, however, did not involve a tax sale; instead, it involved the conveyance of a deed with respect to a disputed property. *See id.* at 612. Because Ms. Anderson's claims accrued at the time the City sold her property and initiated the tax sale process, *Hughes* is completely inapposite here. Similarly, *Harrison v. Montgomery Cnty., Ohio*, 997 F.3d 643, 651 (6th Cir. 2021), does not support Ms. Anderson's claims. In *Harrison,* the court determined that "[u]ntil it became clear the State would seize Harrison's surplus equity by transferring title . . . no taking occurred." Here, it

5

was evident that Ms. Anderson would not receive the alleged full market value of the property (as opposed to the auction value of the property) as soon as the tax sale occurred. Because Ms. Anderson knew that she would not be paid anything more than the surplus over the tax debt at the time of the state court proceedings, Ms. Anderson was required to raise this argument as a defense in the state court proceedings. In sum, all of Ms. Anderson's claims had accrued at the time of the state court proceedings, and she had an obligation to raise them as a defense to the tax sale. Because res judicata bars all of Ms. Anderson's claims, this Court should dismiss Ms. Anderson's claims against ECTA.

### 2. Ms. Anderson Cannot Allege a Plausible Fifth Amendment Violation

Although this Court should not reach the merits because Ms. Anderson's claims are barred by res judicata, in the event the Court reaches the merits, Ms. Anderson fails to state a plausible Fifth Amendment takings clause claim. In *Tyler v. Hennepin County*, 598 U.S. 631, 642 (2023), the Supreme Court explained that when the government seizes property to satisfy a debt, "a taxpayer is entitled to the surplus in excess of the debt owed." **Nowhere** in *Tyler* does the Supreme Court state that a taxpayer is entitled to the full fair market value of the property. Instead, in *Tyler*, the county sold the property for $40,000 – extinguishing the $15,000 tax debt – and pocketed the remaining $25,000 for its own use. *Id.* at 635. Unlike the tax sale process discussed in *Tyler*, Maryland's tax sale process ensures that, if a sale yields any surplus beyond what is necessary to satisfy unpaid taxes and associated costs, such surplus is returned to the property owner. *See* TP § 14-818(a)(4).

Ms. Anderson's claim that the tax sale violated the Fifth Amendment is contrary to the Supreme Court's recognition that Maryland provides all legally required protections to taxpayers. *Tyler*, 598 U.S. at 640. Specifically, the Supreme Court explained that "Maryland require[s] that

6

only so much land be sold as may be sufficient to discharge the taxes thereon due, and provide[s] that if the sale produce[s] more than needed for the taxes, such overplus of money shall be paid to the owner." *Id.* (internal quotations omitted). This explicit discussion of Maryland's tax sale scheme by the Supreme Court debunks Ms. Anderson's allegation that Maryland's tax sale scheme contravenes *Tyler*. Without question, if Maryland's tax sale scheme had any constitutional deficiencies as alleged by Ms. Anderson, the Supreme Court would have highlighted them at that time – not cited the Maryland tax sale scheme as a model for constitutional compliance. Accordingly, Maryland's tax sale system fully complies with *Tyler*, and this Court should reject Ms. Anderson's attempts to misrepresent *Tyler*.

Moreover, as the Sixth Circuit explained in *Freed v. Thomas*, 81 F.4th 655, 658 (6th Cir. 2023), "neither this court nor the Supreme Court has ever held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property". Instead, "the best evidence of a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure." *Id.* at 659; *see United States v. Davis*, 815 F.3d 253, 260 (6th Cir. 2016) (holding that government does not violate Fifth Amendment by selling property at public auction, even if the property sells for less than its fair market value).

Indeed, the Michigan Supreme Court has explained that awarding the fair market value of the property instead of the price obtained at a public tax foreclosure sale "would run contrary to the general principle that just compensation is measured by the value of the property *taken*" and would not only "[take] money away from the public" but would also allow taxpayers to "benefit from their tax delinquency." *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434, 465-66 (2020). Therefore, Ms. Anderson's argument that she is entitled to compensation for the full fair market value of the property is completely meritless.

Next, Ms. Anderson argues that the City's auction didn't properly value the property. Ms. Anderson asserts that "[t]he City used minimal advertising, directed at repeat-player tax-lien buyers; listed over ten thousand liens at once; established no minimum bid beyond the amount of the tax debt; and imposed a high-bid premium." Opp., at p. 13. Ms. Anderson fails to cite a single case or otherwise any support for her argument that these practices drove down bids. *See* Opp., at p. 13-14. "[M]ere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In any event, rather than drive down the price of bids, these practices encourage tax investors to participate in the tax sale process. As a matter of common sense, directing advertising at repeat-player tax-sale buyers effectively markets the tax sales because repeat buyers are likely to purchase more properties. Similarly, listing thousands of properties at once allows interested tax purchasers to focus their efforts on a single listing and auction rather than many different auctions throughout the year. Ms. Anderson's critique of the high-bid premium as an artificial price suppressant misconstrues its essential function in the auction process. The high-bid premium serves as a critical mechanism for mitigating speculative bidding and ensuring bidder commitment, analogous to the non-refundable deposits that are standard in foreclosure sales.

In addition, the Maryland Supreme Court has recognized that local governments "often set the [redemption] rate higher than rates given on ordinary investments. . . This high rate of return encourages potential tax sale purchasers to invest in the property despite the fact that the property is subject to a right of redemption." *Fish Market Nominee Corp. v. G.A.A., Inc.*, 337 Md. 1, 5 (1994). Thus, rather than depress bid prices, Maryland has established policies that encourage tax sale purchasers to invest in properties. These policies ultimately serve to increase participation in

8

tax sales and create competitive auctions. Accordingly, Ms. Anderson cannot plausibly allege a Fifth Amendment violation.

### 3. ECTA is Not a State Actor

Ms. Anderson cites *Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005), and *Continental Resources v. Fair*, 317 Neb. 391 (2024), in support of her argument that ECTA is a state actor under the Takings Clause. However, both the West Virginia tax sale process discussed in *Plemons* and the Nebraska tax sale process discussed in *Fair* are entirely distinguishable from Maryland's tax sale process. In West Virginia, "the State is the initial seller of the tax lien; thereafter, the State provides the tax lien purchaser with the mechanism to provide notice to interested parties. The State also extinguishes the owner's rights to the property by issuing the tax deed to the property." *Plemons*, 396 F.3d at 572 n.3. In *Plemons*, the tax sale process only involved the purchase of a "tax lien," and then the government assisted the tax sale purchaser in taking title to the property. *Id.* Under West Virginia's tax sale system, the government sends the notices to the taxpayer and extinguishes the taxpayer's title for no compensation. *Id.* at 571.[1]

Similarly, in Nebraska:

> [e]ach county in Nebraska has an automatic lien on property within its boundaries for the property taxes that are due to the government. *See* Neb. Rev. Stat. § 77-1901 (Cum. Supp. 2014). If taxes on the property become delinquent, statutes direct the county to offer to sell its lien via a tax certificate. *See* Neb. Rev. Stat. § 77-1806 (Reissue 2009). Statute sets the cost of the certificate as "the amount of taxes, interest, and cost thereon." Neb. Rev. Stat. § 77-1808 (Cum. Supp. 2014).

---

[1] Because West Virginia's tax sale process differs from Maryland's tax sale process in these material ways, Ms. Anderson's reliance on *Wells Fargo bank, N.A. v. UP ventures II, LLC*, 223 W. Va. 407, 410 (2009), does not further her argument that ECTA engaged in state action.

*Fair*, 317 Neb. at 393 (emphasis added). In other words, in *Fair*, the county only sold the tax lien, and then the government took title to the property and conveyed it to the purchaser without providing additional compensation. *Id.*

On the other hand, as discussed *supra*, in Maryland, the tax sale process involves the sale of the property, not just the tax lien. Essentially, Maryland's tax sale process is the equivalent of a foreclosure sale by a lien holder where the lien holder happens to be the government. Indeed, in *Tyler*, the Court compared the tax sale process to a bank foreclosure by noting that "if a bank forecloses on a home because the homeowner fails to pay the mortgage, the homeowner is entitled to the surplus from the sale." 598 U.S. at 645. Of course, a person losing a home to a mortgage foreclosure is not entitled to the full fair market value of the property (as opposed to the auction value) from the highest bidder; there is no good faith argument that Ms. Anderson should be treated any differently at the tax sale.

Finally, other courts have similarly held that tax sale purchasers are not state actors. *See Tunstall v. Office of Judicial Support of Court of Common Pleas*, 820 F.2d 631, 634 (3d Cir. 1987) (holding that purchaser of property at tax sale is not state actor because "[the tax sale purchaser] simply purchased the property at a proceeding carried out by a local municipality in accordance with state law"); *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 903 (6th Cir. 2003) (holding

that tax sale purchaser did not function as state actor).[2]  Accordingly, this Court should reject Ms. Anderson's assertion that ECTA engaged in state action by purchasing the property.[3]

### 4. Ms. Anderson has Failed to State a Claim for Unjust Enrichment

Again, this Court should not reach the merits of Ms. Anderson's unjust enrichment claim because it is barred by res judicata.  In any event, contrary to Ms. Anderson's assertions, ECTA fully developed its argument as to why Ms. Anderson's unjust enrichment claim fails in its Motion to Dismiss.  Ms. Anderson states that her "unjust enrichment claim is that [ECTA] used the fact that there was a tax lien on her house – and the failure of the City to require just compensation – to get windfall profits by taking her home."  Opp., at p. 27.

ECTA addressed this claim.  Ms. Anderson fails to state a plausible unjust enrichment claim because ECTA rightfully <u>purchased the property</u> at the tax auction, paid the auction value of the property, and did not receive any windfall profits.  ECTA did not play any role in creating Ms. Anderson's purported loss.  Instead, ECTA engaged in the important public service of purchasing a property at a tax sale.  *Heartwood 88, Inc. v. Montgomery County*, 156 Md. App. 333, 364 (2004) ("[T]ax sale purchasers are regarded as **performing a public service**." (emphasis added)).

---

[2] Ms. Anderson attempts to distinguish *Wittstock* by noting that, in Michigan, the municipality only ever assists the tax sale purchaser by issuing a deed if the purchaser brings a quiet title action. Opposition, at p. 22-23 n.12.  Similarly, in Maryland, the municipality assists the tax sale purchaser by issuing a deed if the purchaser receives a judgment foreclosing the right of redemption.  The tax sale processes in Michigan and Maryland are similar rather than distinguishable because the municipalities issue a deed to a tax sale purchaser if the purchaser completes specific actions.

[3] Because the tax sale purchaser's role in the tax sale process is clearly delineated by the Maryland tax sale statutes, there is no need for further factual development on this issue, and this Court should not allow Ms. Anderson to amend her Complaint once again.  Ms. Anderson cites *Sallie v. Tax Sale Invs., Inc.*, 998 F. Supp. 612, 622-23 (D. Md. 1998), in support of her argument that this Court should delay its decision pending further factual development.  Opp., at p. 24.  However, *Sallie* involved the eviction of tenants as a result of tax sale, and is inapposite here.

11

*Johnson v. Zwolak*, No. 08-4854, 2009 WL 928563, at *5 (E.D. Pa. April 7, 2009), supports ECTA's argument. In *Johnson*, the Eastern District of Pennsylvania rejected a taxpayer's unjust enrichment claim against a tax sale purchaser. The court noted that "[the tax sale purchaser] did not play any role in creating [the taxpayer's loss]." *Id.* The court further explained that allowing an unjust enrichment claim against the tax sale purchaser "could establish an unwarranted precedent that could open floodgates of litigation, such that every person losing property at a tax sale for less than alleged market value (which likely could implicate virtually every tax sale) could pursue such a claim against an innocent third party purchaser." As the court recognized, virtually every tax sale results in a sale for less than the alleged market value of the property, but it does not entitle a taxpayer to a claim for unjust enrichment. Accordingly, this Court should dismiss Ms. Anderson's unjust enrichment claim.

### 5. The Tax Sale Process Benefits Baltimore Residents

Finally, Plaintiffs assert that this case is about the transfer of wealth from Baltimore residents to institutional tax-lien investors. Opp., at p. 1. Plaintiffs fail to recognize that "Maryland has a significant interest in encouraging participation in its tax sale program." *PNC Bank, Nat. Ass'n v. Braddock Props.*, 215 Md. App. 315, 334 n.10 (2013) (internal citations omitted). Indeed, "Maryland's tax sale mechanism . . . is critical to the state's need to provide a source of revenue for a host of governmental services provided to its citizens." *Id.* If Plaintiffs succeed in arguing that taxpayers are entitled to the full fair market value of their properties as determined by tax sale purchasers' subsequent sales of the property, there would be no possibility for tax sale purchasers to earn a profit from tax sales, and tax sale purchasers would cease to exist. Maryland case law firmly establishes the importance of tax sales. Thus, contrary to the mischaracterizations and

inflammatory rhetoric presented in the Opposition, the current tax sale process is critical to the state's ability to provide necessary governmental services to its citizens.

### III. CONCLUSION

For the foregoing reasons, ECTA respectfully requests that this Court dismiss Ms. Anderson's claims against ECTA.

Date: February 14, 2025

                                              Respectfully submitted,

                                              /s/ *Elchanan "Elliott" Engel*
                                              Elchanan ("Elliott") Engel, Bar No. 28299
                                              **BERMAN, BOYLE & ENGEL LLC**
                                              1777 Reisterstown Road, Suite 265
                                              Baltimore, Maryland 21208
                                              667-217-5150
                                              ee@bbelaw.com

                                              *Attorney for East Coast Tax Auction, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of February 2025, a copy of the foregoing was electronically served and is available for download via the ECF system.

/s/
Elchanan "Elliott" Engel