IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDMONDSON COMMUNITY
ORGANIZATION, Inc.
and
BONITA ANDERSON,

        *Plaintiffs*,

    v.

MAYOR AND CITY COUNCIL OF
BALTIMORE, et al.,

        *Defendants*.

**Civil Action No. 1:24-cv-01921-BAH**

**PLAINTIFFS' OPPOSITION TO EAST COAST AND TEMPEST'S MOTION TO STAY OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE AN INTERLOCUTORY APPEAL**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................. 1

    I.       East Coast and Tempest have not shown that a stay is warranted. .......................... 1

    II.      The Court should deny the belated motion to certify an interlocutory appeal ....................................................................................................................... 5

           A.      The unjustified delay for East Coast and Tempest's motion warrants denial. .................................................................................... 5

           B.      The issues East Coast and Tempest seek to certify do not meet the requirements for a § 1292(b) appeal. .......................................................... 6

Conclusion ......................................................................................................................... 12

**INTRODUCTION**

The Court should deny East Coast and Tempest's letter motion. Their request for a stay fails entirely to address the harm that delay will cause ECO and Ms. Anderson or to identify any hardship to East Coast and Tempest from proceeding. And at any rate, East Coast and Tempest overstate the potential impact of the Supreme Court's upcoming decision in *Pung v. Isabella County, Michigan*, 25-95, which only partially overlaps with this case. As for the request to certify an interlocutory appeal—belatedly raised two months after this Court's order—none of the three issues East Coast and Tempest raise satisfy the criteria for certification. The reasons they fail vary, but each shares in common that resolution on appeal will not end this case. So rather than grant East Coast and Tempest's motion that will yield months (if not more) of delay in a case that has already been pending for a year, the Court should enter a scheduling order so the case can proceed.

**ARGUMENT**

**I.     East Coast and Tempest have not shown that a stay is warranted.**

This Court should reject East Coast and Tempest's cursory motion for a stay. Courts in the Fourth Circuit consider three factors in weighing whether to grant a stay: "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed." *Turner Constr. Co. v. W. Sur. Co.*, 2022 WL 2209104, at *1 (D. Md. 2022).[1] Although it is East Coast and Tempest's "substantial" burden to establish that a stay is warranted, *see Sierra Club v. Nat'l Marine Fisheries Serv.*, 711 F. Supp. 3d 522, 532 (D. Md. 2024), they do not even mention these factors, let alone try to satisfy them. Instead, they rest on

---

[1] Unless otherwise specified, all internal quotation marks, alterations, and citations are omitted from quotations throughout.

nothing more than the cursory observation that this case contains one overlapping issue with *Pung*, which they incorrectly characterize as being dispositive of this case. That is insufficient.

**Prejudice to the plaintiffs.** East Coast and Tempest's request for a stay ignores the real prejudice to both plaintiffs that would result from the delay of up to eight months that they seek. Since East Coast took her home, Ms. Anderson has had to live with her daughter and grandchildren. The compensation she seeks through this case will allow her to live independently by replacing the home she lost. Obtaining the redress she seeks in the case will thus have a real and immediate impact on her life, and continued delay will exacerbate her current difficulties. *See Sutor v. Amerigroup Corp.*, 2020 WL 2124180, at *2 (E.D. Va. 2020) (holding that "delay[ing] plaintiff's potential recovery" constitutes prejudice that counts against a stay).

The harm to ECO is considerable, too. As explained in ECO's opposition to the motion to dismiss, the refusal of the defendants to provide just compensation when taking property interferes with ECO's ability to do its work, including by making it more difficult for ECO to develop planning documents, interfering with ECO's relationships with developers, and driving residents from the neighborhood. ECF 47 at 50–51. Prolonging those obstacles to ECO's work by another eight months is real prejudice. Further, ECO operates out of borrowed space. It too would benefit from the compensation that it seeks in this case.

**Hardship on East Coast and Tempest.** For a stay to be proper, there must be a "clear case of hardship or inequity in being required to go forward," *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 1946262, at *2 (E.D. Va. 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)), but East Coast and Tempest have identified no hardship or inequity that would result from litigating. It was their burden to do so, and the omission should be fatal the motion.

To the extent that East Coast and Tempest simply do not want to conduct discovery, that is insufficient. "[T]he mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay." *Sutor*, 2020 WL 2124180, at *2; *see also, e.g.*, *Guerrero v. Bank of Am. N.A.*, 2023 WL 2712484, at *8 (W.D.N.C. 2023) ("[T]he ordinary burden of proceeding with discovery and related briefing does not outweigh the harm that the [plaintiffs] would suffer if they were deprived of their ability to determine the [defendant's] liability."); *Ung v. Universal Acceptance Corp.*, 2016 WL 9307090, at *1 (D. Minn. 2016) (denying motion to stay in case that had been pending for a year where defendant pointed only to "preserv[ing]" the "resources of the parties" because "that is true in every case"). Staying the case because of ordinary discovery obligations would be especially unwarranted here since, as explained below, East Coast and Tempest will have to engage in discovery even if the case is temporarily stayed because there is no possibility that *Pung* resolves all the issues in this case.

***Judicial efficiency.*** Finally, East Coast and Tempest have not shown that a stay would promote judicial efficiency. They assert (at 2) as the principal basis for their motion that *Pung* will have a "dispositive impact on Plaintiffs' argument that they did not receive just compensation." For two reasons, that is not right.

First, it overlooks that the Supreme Court granted certiorari in *Pung* on two separate issues. In addition to the just compensation question that East Coast and Tempest highlight, the Supreme Court also granted certiorari to decide "whether the forfeiture of real property worth far more than needed to satisfy a tax debt but sold for a fraction of its real value constitutes an excessive fine under the Eighth Amendment, particularly when the debt was never actually owed." Petition for Writ of Certiorari at i, *Pung v. Isabella Cnty.*, 2025 WL 2093486 (S. Ct. July 22, 2025) (No. 25-

3

95). If the Supreme Court rules for *Pung* on that ground alone, the case will have no impact at all on Ms. Anderson and ECO's just-compensation claims.[2]

Second, even if the Supreme Court decides the just compensation question presented in *Pung*, that will not end this case. The *Pung* petition presents the Supreme Court with the choice of measuring just compensation by what the petitioner characterizes as an "artificially depressed auction sale price," or, alternatively, by the fair market value of the property, which the petition equates with assessed value.[3] If the Court decides that just compensation is measured by fair market value, multiple issues will remain in this case. True, in that scenario, the City's auction will, as a matter of law, be an inadequate measure of just compensation. But the parties will still need to litigate what the plaintiffs' actual damages are, East Coast's and Tempest's status as state actors, and the multiple affirmative defenses that the defendants have raised. *See* ECF 55 at 10–11; ECF 60 at 7–8. Conversely, even if the Court decides that a public auction of *properties* is sufficient, the plaintiffs will still have a claim here. In addition to alleging that the defendants artificially depress the auction prices in Baltimore, the plaintiffs allege (and defendants dispute) that the City auctions tax liens, not properties—and thus produces constitutionally inadequate bids. *Pung* will do nothing to resolve that dispute.

---

[2] Plaintiffs note that they are currently considering whether to seek leave to add an Eighth Amendment claim. Even if they do so (and if the Court permits the amendment), this Court will have the benefit of the Supreme Court's view on the Eighth Amendment issue before being asked to decide it and a stay will not enhance judicial efficiency.

[3] The first question presented in the Pung petition offers "the artificially depressed auction sale price" and "the property's fair market value" as alternative measures of just compensation. Petition at i, *Pung*, 2025 WL 2093486 (No. 25-95). The petition then treats "fair market value" as being "Isabella County's own annual property valuation determination" rather than the value for which the property was subsequently sold by the tax sale purchaser. *Id.* at 5.

Finally, the Supreme Court's decision in *Pung* bears little on judicial efficiency here in any event, because this Court will not be asked to decide how just compensation is measured until *Pung* is decided. That issue will only become ripe in this case after the parties conclude a reasonable period of discovery and exchange cross-motions for summary judgment. By that time, which plaintiffs estimate will be late next spring, *Pung* will be either issued or imminent. This Court will decide the issue only once, and with the benefit of *Pung*.

In sum, East Coast and Tempest's motion, not joined by Baltimore City, appears to reflect more their desire to avoid discovery than to enhance judicial efficiency.

\*　　\*　　\*

Every factor thus points against a stay. Delay will work real harm on ECO and Ms. Anderson. There is no "clear" case of hardship or inequity to East Coast and Tempest. And a stay will have no meaningful impact on judicial efficiency.

**II. The Court should deny the belated motion to certify an interlocutory appeal**

East Coast and Tempest fare no better in moving this Court to certify an interlocutory appeal on three separate issues. As an initial matter, the Court can deny the motion simply because East Coast and Tempest waited too long to seek certification. But even if this Court reaches the merits of their request, none of the issues they seek to certify meets the criteria for an interlocutory appeal.

**A. The unjustified delay for East Coast and Tempest's motion warrants denial.**

"[T]he decision to certify an interlocutory appeal is firmly in the district court's discretion." *Bezek v. First Nat'l Bank of Pa.*, 2023 WL 2571508, at \*2 (D. Md. 2023). "In other words, district courts are permitted, not required, to certify an interlocutory appeal in certain extraordinary situations." *Id.*

Although 28 U.S.C. § 1292(b) imposes no rigid deadline, district courts have exercised that discretion to refuse to certify appeals—and courts of appeals refuse to accept certified appeals—when there is an unexplained "gratuitous" delay. *Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990). A delay of "two months" is "sufficient grounds" to deny certification. *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000); *see also, e.g.*, *Green v. City of New York*, 2006 WL 3335051, at *2 (E.D.N.Y. 2006) (two months); *Ferraro v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992) (two-and-a-half months). And that holds true irrespective of whether the issue may otherwise satisfy the criteria for certification. *See Minter v. Wells Fargo Bank, N.A.*, 2013 WL 1795564, at *1 (D. Md. 2013).

East Coast and Tempest's delay here warrants denial of their motion. They have made no attempt to explain why they waited two months to file. Nor would it be any answer, on reply, that East Coast sought the plaintiffs' consent in mid-September. *See* Ex. A. That cannot explain why East Coast (let alone Tempest) waited an additional month to file three pages of letter briefing, especially since East Coast represented in the same request for consent that it would file both its motion (if it made one) and an answer within 16 days. *Id.*

**B.**  **The issues East Coast and Tempest seek to certify do not meet the requirements for a § 1292(b) appeal.**

Section "1292(b) should be used sparingly and . . . its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). Certification under § 1292(b) is reserved for "exceptional circumstances" because it represents "a departure from the basic policy of postponing appellate review until after the entry of a final judgment" to avoid piecemeal appeals. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

To be fit for certification, an issue must meet three criteria. First, it must involve a "controlling question of law." *Oak Plaza, LLC v. Buckingham*, 2024 WL 4149835, at *1 (D. Md.

2024). Second, there must be "substantial ground for difference of opinion" on the issue. *Id.* And third, an immediate appeal must be capable of "materially advance[ing] the ultimate termination of the litigation." *Id.* None of East Coast and Tempest's issues satisfy these criteria.

### 1. Whether the auction sells property

East Coast and Tempest have failed to demonstrate their first proposed issue for certification—"whether the Maryland tax sale process involves the sale of the tax lien rather than the sale of the property"—satisfies these criteria. As an initial matter, it's unclear what East Coast and Tempest even seek to certify. To the extent they seek to have the Fourth Circuit consider only their argument that the Maryland code labels the interest sold at the auction "property"—an argument that this Court correctly rejected, *see* ECF 53 at 40–41—that question cannot possibly materially advance the litigation. Whether the auction sells (and adequately measures the value of) "property" under the federal Constitution cannot be controlled by the nomenclature in a state statute. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638–39 (2023) (rejecting argument that plaintiff had no takings claim because Minnesota law declared she had no property interest in surplus value).

To the extent East Coast and Tempest seek to certify whether the auction actually sells the property, that fails on all three criteria. *First*, that is not purely a question of law. "The term 'question of law' for purposes of section 1292(b), refers to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine, as opposed to questions of law heavily freighted with the necessity for factual assessment." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015). But the nature of the interest sold at the auction first requires a factual record—which the plaintiffs will develop through both fact and expert witnesses—before there can be any assessment of whether the facts show that "property" is sold for purposes of the Fifth Amendment. That factual development will go to the heart of whether tying the plaintiffs'

compensation to the winning auction bid (as Baltimore currently does) provides "just" compensation—which, after all, is the only reason that it matters whether the auction sells property—or not.

Nor is there any "substantial ground for difference of opinion" on this issue. The plaintiffs have plainly alleged that the auction simply does not sell property: The winning bidder does not walk away with a deed, i.e., with the property; instead, the bidder gets a lien—the right to collect interest and the contingent right, if there is no redemption, to take the property at some undefined point in the future. *See, e.g.*, ECF 22 ¶¶ 26, 51, 64. On the allegations in the complaint, there is no ground for disagreement.

In claiming otherwise, East Coast and Tempest observe (at 3) only that this is a "matter of first impression." But "[i]t is well settled that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010); *see also, e.g.*, *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (similar); *Brady v. Walmart Inc.*, 2024 WL 5075200, at *4 (D. Md. 2024) (similar).

Finally, East Coast and Tempest are wrong to assert (at 3) that resolution of this issue will "certainly eliminate a trial and discovery." Indeed, their motion to stay rests on the opposite being true. In other words, even if the auction does sell property (it doesn't), the plaintiffs will still have their alternative theory that the auction artificially depresses prices and denies them just compensation for that reason as well. That claim will go through discovery, and potentially trial, irrespective of what happens on the issue that East Coast and Tempest seek to certify.

### 2. Whether East Coast and Tempest are state actors

East Coast and Tempest's second question fails all three prongs of the certification test as well. First, East Coast and Tempest identify no controlling "question of law," but instead propose

8

(at 3), at the highest possible level of generality, certifying whether they "functioned as state actors." That inquiry, which simply asks whether the complaint states a claim, is insufficient. Section 1292(b) review "is not appropriate where, for example, the question presented turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 341 (4th Cir. 2017). So courts do not certify general, "[in]sufficiently circumscribed" questions like the one that East Coast and Tempest have proposed. *See Oak Plaza*, 2024 WL 4149835, at *2 (refusing to certify the question of whether the plaintiffs' claims "for malpractice are barred by the Statute of Limitations" because it was not "sufficiently circumscribed").

The defect in East Coast and Tempest's question is especially potent because it concerns the state-action requirement. As the Fourth Circuit has explained, "there is no bright-line rule separating state action from private action"; rather, "the inquiry is highly fact-specific in nature." *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 116 (4th Cir. 2022). Reflecting that reality, the district court in *Dorce*—another just compensation case involving private defendants—declined to certify this same question after it found state action was adequately alleged. *See Dorce v. City of New York*, 2022 WL 3133063, at *1 (S.D.N.Y. 2022).

Second, there is no substantial grounds for disagreement. As this Court explained, the Fourth Circuit, facing "substantially similar" facts, decided the issue in the plaintiffs' favor. ECF 53 at 33 (discussing *Plemons v. Gale*, 396 F.3d 569, 572 n.3 (4th Cir. 2005)). And if it were needed, the weight of authority is in accord. *See Cont'l Res. v. Fair*, 10 N.W.3d 510, 523 (Neb. 2024); *257-261 20th Ave., Realty, LLC v. Roberto*, 327 A.3d 1177, 1192 (N.J. 2025); *Dorce v. City of New York*, 608 F. Supp. 3d 118, 139 (S.D.N.Y. 2022).

9

In arguing otherwise, East Coast and Tempest observe that this Court found it difficult to distinguish *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899 (6th Cir. 2003). *See* ECF 53 at 33. That misunderstands the inquiry. What matters is whether there are substantial grounds for disagreement in this Court, not in the abstract. *See In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013). Here, there is no room for disagreement because the Fourth Circuit has ruled on the issue. So even assuming that *Wittstock* was persuasive (rather than just an outlier decision), that still would not satisfy § 1292(b). District courts should not certify, and appellate courts will not accept, issues that would need to be addressed en banc to change the outcome in the district court. *See id.*

Finally, certifying this issue will not materially advance the litigation or allow East Coast and Tempest to "avoid" discovery, as they claim. ECF 64 at 4. As *Dorce* noted, because of the fact-dependent nature of the state-action inquiry, reversal on appeal would just mean that "the plaintiffs would be given the opportunity to file an amended complaint with more specific factual allegations." 2022 WL 3133063, at *1. And regardless of what happens on this issue, the case will proceed against the City. That means, in turn, that East Coast and Tempest cannot escape discovery: Even if East Coast and Tempest were not parties, ECO and Ms. Anderson would still need to seek third-party discovery from them to prove their case.

### 3. Whether res judicata bars the plaintiffs' claims against East Coast and Tempest.

Finally, East Coast and Tempest have failed to demonstrate that their res judicata defense warrants certification. Although the plaintiffs do not dispute that this presents a legal question, East Coast and Tempest cannot satisfy the other two criteria for certification.

Start with their claim that this Court's ruling on res judicata presents "substantial grounds for difference of opinion." The only support they offer (at 4) for that assertion is that *Ortiz v. Prince*

*George's Cnty.*, 2025 WL 315963, at *8 (D. Md. 2025), "reach[ed] [the] exact opposite conclusion[]" about the applicability of res judicata here.

*Ortiz* did no such thing. First, *Ortiz* analyzed only whether res judicata barred "Count I" of the plaintiff's complaint, which sought "a *declaratory judgment* as to the constitutionality of Maryland's tax sale scheme to the extent" it denies just compensation. *Id.* at *7–8 (emphasis added). Whatever the correctness of that ruling,[4] it does not address whether res judicata bars damages claims like the ones ECO and Ms. Anderson bring. That distinction matters. As the plaintiffs' opposition to the motions to dismiss explained and this Court agreed, ECO's and Ms. Anderson's damages claims "had not accrued at the time the state court litigation to foreclose the right of redemption began, or ended." ECF 53 at 23; ECF 47 at 44. Second, whereas *Ortiz* broadly challenged "the constitutionality of Maryland's tax sale scheme," the same cannot be said of ECO and Ms. Anderson. As this Court observed, the plaintiffs here "are not challenging the constitutionality of the tax sale system" writ large. ECF 53 at 23. All that *Ortiz* stands for, then, is that a court presented with a broadside attack on Maryland's statutes, considering a different form of relief, and addressing different arguments than the ones presented here, reached a different result. It does not establish that there are substantial grounds for difference of opinion on the arguments that this Court resolved.

East Coast and Tempest are also, once again, wrong to claim (at 5) that certifying the res judicata question to the Fourth Circuit would "avoid the need for trial and save enormous expenses

---

[4] *Ortiz* also held that the plaintiff's damages claim was barred by *Rooker-Feldman*. That leaves it conflict not just with the numerous cases that ECO and Ms. Anderson have already brought to this Court's attention, *see* ECF 47 at 37 (collecting cases), but also with a Ninth Circuit decision (issued the same week as this Court ruled on the motions to dismiss) that addressed a system materially indistinguishable from Baltimore's, *see Searle v. Allen*, 148 F.4th 1121, 1131 (9th Cir. 2025)).

11

in discovery." Here, too, the case will proceed against the City, which did not raise a res judicata defense against either the plaintiffs' damages claims or ECO's claim for prospective relief. So a trial (or at least summary judgment practice) is inevitable. And because the plaintiffs' damages claims will proceed against the City, discovery will inevitably involve East Coast and Tempest, whether as parties or third-parties, too.

So just like the first two issues East Coast and Tempest seek to certify, the res judicata question cannot satisfy § 1292(b)'s strict criteria either.

## CONCLUSION

For the foregoing reasons, the Court should deny East Coast and Tempest's motions.

Dated: October 24, 2025                      Respectfully submitted,

*/s/ Robert D. Friedman*
ROBERT D. FRIEDMAN*
DEEPAK GUPTA*
GUPTA WESSLER LLP
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
robert@guptawessler.com

JENNIFER BENNETT*
GUPTA WESSLER LLP
505 Montgomery Street
Suite 625
San Francisco, CA 94111
(415) 573-0336

LEE H. OGBURN (MD Bar 00018)
Maryland Legal Aid
500 E. Lexington Street
Baltimore, Maryland 21202
(410) 951-7777
logburn@mdlab.com

*Counsel for Plaintiff*

* Admitted pro hac vice

12